# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings |
| | ) | Under Chapter 11 |
| FIRST TO THE FINISH KIM AND | ) | |
| MIKE VIANO SPORTS, INC., | ) | BK No. 20-30955 |
| | ) | |
| Debtor(s). | ) | |
| | ) | |
| NIKE USA INC., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | Adversary No. 21-03013 |
| v. | ) | |
| | ) | |
| CNB BANK & TRUST N.A., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |
| MICHAEL E. COLLINS | ) | |
| CHAPTER 11 TRUSTEE, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | Adversary No. 21-03016 |
| v. | ) | |
| | ) | |
| CNB BANK & TRUST N.A., | ) | |
| | ) | |
| Defendant(s). | ) | |

## OPINION

There are four motions for summary judgment before the Court filed by three parties. These parties are the Chapter 11 case Trustee ("Trustee"), Nike USA, Inc. ("Nike") and CNB Bank & Trust, N.A. ("CNB"). The four matters involve two Adversary Proceedings[1]. In Adversary Proceeding 21-03013 Nike seeks to determine the validity of CNB's liens and CNB's claim status in Counts I-VII. Nike further seeks to avoid a

---
[1] A motion to consolidate the two adversaries (Doc. 10, Case No: 21-03013; Doc. 3, Case No: 21-03016) was filed by the Trustee on July 26, 2021 and the motion was granted in part only for scheduling purposes.

$200,000 post-petition transfer made to CNB in Counts VIII-X. Nike filed a motion for summary judgment (Doc. 49) and CNB filed a motion for summary judgment (Doc. 47) on November 30, 2022.

In Adversary Proceeding 21-03016, the Trustee seeks to avoid, reform and preserve CNB's liens for the benefit of the estate as first priority in Counts I-IV. Trustee also seeks to avoid and recover the $200,000 transfer made to CNB post-petition in Counts V-VI along with disallowing CNB's claim in Count VII. On November 30, 2022, the Trustee filed a motion for partial summary judgment on Counts I-IV (Doc. 39) while CNB filed a motion for summary judgment (Doc. 37).

The motions for summary judgment were submitted based on the following uncontested facts. In the late 1980's, the Debtor started its business operations, which has continued to this date. During its existence it has used different names. It also operated its business using different legal entities, first as a corporation, then as an unincorporated entity, and then back to a corporate entity. Regardless of the name used or the form of the entity, the nature of the business operation and how it was conducted did not change. The business operation was selling track and field supplies, footwear, apparel, equipment and accessories to various individuals, high schools, and college teams and organizations. While the name of the business operation changed from time to time, as did the nature of the legal entity conducting the business operation, there was but a single operating business. The operating business is owned and operated by the same people, the Vianos. The Vianos, on behalf of the Debtor, signed all of the loan documentation and the Debtor received and used the loan proceeds.

The following is a chronological listing of the various entities operating the business along with the relevant loan documentation:

December 7, 1988 – "First To The Finish Kim and Mike Viano Sports, Incorporated" registered with the Illinois Secretary of state
December 24, 1992- A first security agreement is executed
May 2, 1994 – "First To The Finish Kim and Mike Viano Sports, Incorporated" is involuntarily dissolved
December 20, 1999 – "First To The Finish Kim and Mike Viano Sports, Inc." is registered with the Illinois Secretary of State
October 22, 2014 – A second security agreement is executed
May 17, 2018 – Two notes are executed evidencing the debt owed to CNB along with the other loan documents attached to CNB's claim.

The Debtor's instant Chapter 11 case was filed on October 7, 2020. On May 19, 2021, CNB filed an emergency motion for the appointment of a Chapter 11 Trustee (Doc. 134) to which Nike joined (Doc. 137). The motion was granted on May 20, 2021 and the Chapter 11 Trustee was appointed on June 15, 2021 (Doc. 156). Nike, a supplier to the debtor, filed its claim (Court Claim #21-1) on March 1, 2021 in the total amount of $913,907.10. CNB filed its claim (Court Claim #22-1) on March 3, 2021 in the total amount of $9,691,291.86.

In support of its secured claim CNB attached the following:

1. A promissory note dated May 17, 2018 for $ 6,500,000.00 showing the borrower as "First To The Finish Inc." with an identical signature block.

2. A business loan agreement referencing a loan dated May 17, 2018 and a change in terms agreement referencing a loan dated May 17, 2018. Both of these documents show the borrower to be "First To The Finish Inc." with identical signature blocks

3. A promissory note dated May 17, 2018 for $2,000,050.00 showing the borrower as "First To The Finish Inc." with an identical signature block.

    4. A business loan agreement referencing a loan dated May 17, 2018 in the amount of $2,000,050.00 to "First To The Finish Inc." with an identical signature block.

    5. A security agreement dated October 22, 2014 showing the borrower as "First To The Finish Inc." with an identical signature block.

    6. A security agreement dated December 24, 1992 showing the borrower as "First To the Finish Kim and Mike Viano Sports, Incorporated" with an identical signature block.

    7. A Commercial Code financing statement dated January 4, 1993 showing the borrower as "First To The Finish Kim and Mike Viano Sports, Inc.".

    8. Commercial guaranties signed by Mike and Kim Viano guarantying the borrowing of "First To The Finish Inc.".

  All of the parties' request summary judgment in their favor regarding the attachment of the 1992 and 2014 security agreements and the subsequent perfection of CNB's security interest. CNB seeks the determination that the two security agreements properly attached before the filing of the instant bankruptcy proceeding and thus properly perfect its security interest per the 1993 Uniform Commercial Code UCC-1 financing statement. Nike and the Trustee seek the determination that neither of the security agreements attached and thus CNB's security interest was never properly perfected. Only CNB requests summary judgment on the post-petition transfer of the $200,000. Specifically, CNB seeks a determination that the Debtor did not provide the $200,000 payment.

Federal Rule of Civil Procedure 56(a)[2] provides:

> a) A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The evidence presented must be "viewed in the light most favorable to the party opposing the motion." *Termite Control Corp. v. Horowitz,* 28 F.3d 1335, 1352 (2nd Cir. 1994). The moving party can show that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp v. Cartett*, 477 U.S. 317, 322-23 (1986). A fact is material if "it might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment always bears the initial burden of proving that there is no genuine dispute of a material fact. Once a sufficient showing has been made using affidavits, declarations, or other evidentiary materials, an opposing party cannot just rely on the pleadings and reassert the allegations or denials made in it. *Placid Oil LLC v. Avalon Farm Inc.*, 2022 Bankr. Lexis 1565, 23-24 (Bankr. N.D. Tex 2022).

Nike and the Trustee contend CNB is not a secured creditor. They argue that the Debtor failed to authenticate the loan documentation, so there was no attachment as required by Article 9 of the Uniform Commercial Code[3]. The basis of their contention is twofold. First, there was no authentication by the Debtor and thus no attachment of the security interest as the correct name of the Debtor is "First To The Finish Kim and Mike Viano Sports

---

[2] Applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056
[3] As adopted by the State of Illinois in 810 Ill. Comp. Stat. § 5/9-101 *et seq*

Inc.", while the name on the loan documentation, with the exception of the December 24, 1992 security agreement, is "First To The Finish Inc.". The second, is that in order for authentication and attachment to have occurred the loan documentation must be reformed. Both Nike and the Trustee, citing *In re Duckworth,* assert reformation is not possible after the Chapter 11 was filed. *State Bank of Toulon v. Covey (In re Duckworth),* 776 F.3d 453 (7th Cir. 2014).

Whether CNB is a secured creditor, or an unsecured creditor, is a matter of state law. In these four motions the critical and controlling issue is whether CNB complied with the provisions of Article 9 of the Uniform Commercial Code so as to create a security interest in the Debtor's assets. There are two requirements for a creditor to claim a security interest in personal property against a debtor that has priority over third parties. One is perfection and the other is attachment. Section 5/9-308, governs perfection and § 5/9-203 governs attachment. Each has its own requirements and are related as § 5/9-308 provides:

> a) Perfection of security interest. Except as otherwise provided in this Section and Section 9-309, a security interest is perfected if it has attached and all of the applicable requirements for perfection in Sections 9-310 through 9-316 have been satisfied. A security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches.

810 Ill. Comp. Stat. § 5/9-308(a) (2022). Section 5/9-203 sets forth the requirement for attachment and provides as follows:

> a) Attachment. A security interest attaches to the collateral when it becomes enforceable against the debtor with respect to the collateral....
> b) Enforceability...a security agreement is enforceable against the debtor and third parties with respect to the collateral only if:
>    1) value has been given;

>   2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
>   3) one of the following conditions are met:
>
>     A) the debtor has authenticated a security agreement that provides a description of the collateral....

810 Ill. Comp. Stat. § 5/9-203 (2022).

There is no issue as to the first two requirements of § 5 / 9-203(b). CNB gave value when it made the loans and the Debtor had rights in the collateral it gave to CNB. The issue is whether the Debtor authenticated a security agreement so as to have attachment.

This Court will start its analysis with two observations. First, § 5/9-203 does not specifically require a debtor be identified by name. Second, while the names utilized in the loan documentation are not identical to the Debtor's name, they are not totally dissimilar. All the names used in the loan documentation and the name of the Debtor use "First To The Finish".

The following list depicts the various stages of the Debtor's business operation based on 1) calendar dates, 2) a description of the Debtor's legal status, 3) the Debtor's name, 4) the name on the security agreement, 5) the name on the Uniform Commercial Code financing statement, and 6) a conclusion concerning compliance with § 5/9-203 based on an analysis to follow:

> December 7, 1988 to May 24, 1994: Initial incorporation to dissolution of First Corporation.
> Name of Debtor : "First To The Finish Kim and Mike Viano Sports, Incorporated".
> Name on the December 24, 1992 security agreement: "First To The Finish Kim and Mike Viano Sports, Incorporated".
> Name on January 4, 1993 financing statement: "First to the Finish Kim and Mike Viano Sports, Incorporated".
> Compliance with § 5/9-203: Complied as no difference in names.

May 24, 1994 to December 20, 1999: Involuntary dissolution to Incorporation of the Second Corporation (Debtor).
Name of Debtor: "First to the Finish Kim and Mike Viano Sports, Incorporated".
Name on Security Agreement: "First to the Finish Kim and Mike Viano Sports, Incorporated".
Name on Financing Statement: "First to the Finish Kim and Mike Viano Sports, Inc."- Amended in 1996

December 20, 1999 to October 22, 2014: Incorporation of Second Corporation (Debtor) to, and including the date, of the second security agreement.
Name of Debtor: "First To The Finish Kim and Mike Viano Sports, Inc.".
Name on Security agreement: "First to the Finish Kim and Mike Viano Sports, Incorporated".
Name on Financing Statement: "First To The Finish Kim and Mike Viano Sports, Inc." – Continued multiple times (1997, 2002, 2007, 2012, 2017)
Compliance with § 5/9-203: Complied as the difference in the names is a misnomer.

October 22, 2014 to Present: Additional loan documentation and case filing
Name on security agreement: "First To The Finish Inc.".
Name on financing statement: "First To The Finish Kim and Mike Viano Sports, Inc.".
Name on May 17, 2018 promissory notes: "First To The Finish Inc."
Compliance with § 5/9-203: Complied as difference in the names is a misnomer.

Whether the names need to be identical for authentication purposes is a matter of state law. The parties have not cited any cases decided by Illinois State Courts which resolve this issue. Nor has this Court's research found any. The issue appears to be one of first impression. However, Illinois State Courts along with Federal District and Bankruptcy Courts sitting in Illinois have addressed the issue of a misnomer in non-Commercial Code cases.

In *Cheese Depot Inc. v. Sirob Imports, Inc.*, the Court dealt with an issue involving a contract to purchase a business where Cheese Depot, Inc. was misidentified as Cheese Factory. *Cheese Depot Inc.,* 2018 U.S. Dist. Lexis 64024 (N.D. Ill. 2018). The District Court Magistrate stated "[h]owever, there is a general concurrence of modern

authority to the effect that a misnomer or variance from the precise name of the corporation…is not material if the identity of the corporation is unmistaken either from the face of the instrument or from the averments and proof." *Id.* at *13, (quoting *Malleable Iron Range Co. v. Pusey*, 148 Ill. App. 344, 347, 1909 WL 936, at *2 (1909)). The Magistrate continued on by providing that,

> "…courts in other jurisdictions have held that misidentification of a contracting party's legal name in a contract does not, in and of itself, prohibit any party to that contract from enforcing it as long as the entity's true identity is reasonably clear or can be ascertained by sufficient evidence and the other parties to the contract were not, or were not likely to have been mislead by the misidentification."

*Id.* at *14, (quoting *HM of Topeka, LLC v. Indian Country Mini Mart*, 44 Kan. App. 2d 297, 236 P.3d 535, 540 (Kan. Ct. App. 2010)).

In *Mulkanoor* the real estate mortgage at issue in the Chapter 11 case identified the lender as "HLB Mortgage" rather than its correct name of "HLB Mortgage Services Corp". *Mulkanoor v. Am. Home Mortg. Corp (In re Mulkanoor),* 595 B.R. 795 (Bankr. N.D. Ill. 2018). The Bankruptcy Court for the Northern District of Illinois held that the use of a mortgagee's business name on a mortgage in place of the name registered with the state did not render the mortgage invalid, nor did it permit the individual debtor to avoid the mortgage by exercising the strong-arm powers granted by the Bankruptcy Code. *Id*.

Applying these decisions to the facts in this case, this Court concludes that the dissimilarity in names does not prevent authentication and attachment. Regardless of the Debtor's name or the name used in the loan documentation, there has been and is, but a single business entity. That business entity, has been and is, owned by the Vianos. The Vianos are, and have been, officers and operated the business entity. The business entity has been, and

is, selling athletic footwear, apparel, equipment, and accessories. The business entity received loans from CNB. The Vianos signed the loan documentation on behalf of the business entity. The loan proceeds were used by the business entity. The Debtor did incur a debt with CNB and that debt was secured as it was authenticated and attached.

Nike's and the Trustee's attacks on CNB's secured creditor status relies heavily on the Seventh Circuit Court of Appeals decision in *Duckworth*. 776 F.3d 453. Nike and the Trustee argue that for CNB to have an enforceable security interest, the security agreement must be reformed to change a term, specifically the name, and that *Duckworth* does not permit a reformation of a term as to do so would violate the parol evidence rule. *Id.* CNB responds that *Duckworth* is not controlling as the name of a party is not a term, and that the difference in the names is merely a misnomer which does not affect the loan documentation. *Id.*

In *Duckworth* the security agreement mistakenly referenced a note dated December 13 when the actual date of the note was December 15. *Id.* at *455. The Seventh Circuit Court of Appeals held that the security agreement did not give the bank a security interest in specified collateral because parol evidence could not be used against a trustee to correct the mistaken description of the debt to be secured. *Id*. at 461.

This Court need not decide if the name of a party is a term which is not subject to change due to the parol evidence rule. Even assuming that the name of a party is a term, there is no attempt to change that term. What is to be decided is whether the borrower remained the same and whether the name used in the loan documentation is sufficient to include the name of the Debtor. Based on the discussion set forth above, this Court finds

that the divergence in names is a misnomer and is not sufficient to constitute a change in terms.[4]

The Trustee and Nike also seek to avoid the 1992 security agreement. This security agreement did use the correct name "First To The Finish Kim and Mike Viano Sports Incorporated", but avoidance is sought on the grounds the 1992 security agreement ceased having a legal effect when the corporation was involuntarily dissolved in 1994. Stated another way, when the corporation ceased to exist, so did the security agreement.

Nike and the Trustee do not contend that the 1992 security agreement was terminated by its parties or that steps were taken as part of the involuntary dissolution to terminate the agreement. Rather Nike and the Trustee contend that when the prior corporation was dissolved the 1992 security agreement was automatically terminated as the grantor of the agreement no longer existed.

In their motions and briefs, the parties do not fully address the issues of what happens to a lien on a corporate debtor's assets when the corporation is dissolved, and this court has its doubts that Nike's and the Trustee's contention is correct. A corporate debtor cannot unilaterally avoid a lien on assets by merely dissolving. In particular, when the assets subject to the lien are transferred to another entity which continues to use those assets in a continuing operation of the business. When the prior corporation was terminated it's assets, liabilities and obligations, including those to CNB under the 1992 security agreement, did not just cease to exist. They passed to the unincorporated entity which continued to operate the business,

---

[4] In *Mulkanoor*, the Bankruptcy Court had the opportunity to apply the reasoning in *Duckworth* to a non-Commercial Code misnomer and failed to do, stating "Duckworth…dealt with the security requirements of the UCC". 595 B.R. at 803

which in turn passed them to the Debtor who continued to operate the business. But that issue need not be further pursued, as it would not fully address the issue of whether CNB's lien can be avoided.

That does not mean that the 1992 security agreement is still viable. In 2014 a second security agreement was executed by the Debtor, without canceling the 1992 security agreement. The execution of the 2014 security agreement subsumed the 1992 security agreement for it is a basic concept that pre-contract negotiations or terms are consumed by a subsequent written contract.

The foregoing addresses the parties' various arguments in support of their motions and comes to the conclusion that there was authentication and attachment resulting in CNB being a secured creditor. There is one aspect of this analysis, narrower in scope, which comes to this conclusion and should not be overlooked. There was but a single business operation. The Debtor was again incorporated in 1999 and in 2014 the Debtor executed a second security agreement which subsumed the 1992 security agreement. Despite the misnomer, the 2014 security agreement authenticated CNBs security interest with attachment following. Therefore, the requirements of § 5/9-203 were met and CNB is a secured creditor

The Trustee and Nike also take issue with the timing of the perfection and attachment. Specifically, they argue that the involuntary dissolution and later incorporation causes problems with attachment as it was after the 1992 agreement and perfection as it was after the 1993 financing statement. The Commercial Code does not require perfection and attachment to occur in any particular order. A security agreement

can precede a financing statement, or vice versa. *See* 810 ILCS § 5/9-502(d).

In summary, the ongoing status of the business operations was anything but normal and CNB's documentation of the loan transactions was unorthodox. The challenge to the 1992 security agreement does not totally affect the issue of attachment. The only challenge to the 2014 security agreement and later loan documentation is that the names are different. This Court has determined this to be a misnomer under Illinois State law and not fatal. This Court finds that it is appropriate to grant summary judgment in favor of CNB against both Nike and the Trustee on the Counts dealing with attachment and perfection.

There is one last consideration that needs to be addressed. That is what effect this Court's finding that CNB is a secured creditor has on the Counts seeking recovery of the $200,000.00 payment made to CNB. In Adversary Proceeding 21-02013, only CNB seeks a determination by summary judgment as to all Counts. Unrelated to the Counts seeking to avoid CNB's status as a secured creditor are the Counts relating to the recovery of the $200,000.00 payment made to CNB. CNB takes the position that only the Trustee can seek such a recovery and that the payment was made by an individual guarantor and not the Debtor. In Adversary Proceeding 21-03016, CNB seeks a summary judgment on all Counts. CNB argues that the payment was made by Mike Viano individually and not by the Debtor.

Section § 549(a) deals with post-petition transfers and it provides that:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--

> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

The Court will first address CNB's motion against Nike. Nike provided that it would voluntarily dismiss the Counts related to the post-petition transfer and provided no arguments against summary judgment. Nike has not dismissed its Counts and even if Nike decided not to dismiss the Counts, it is unlikely that it would be successful. This is due to § 549 allowing a trustee to avoid and recover a post-petition payment. 11 U.S.C. § 549. Nike does not have standing to pursue these claims and since it has not dismissed its Counts, the Court finds it appropriate to grant summary judgment in favor of CNB.

Moving on to CNB's motion against the Trustee, CNB relies on the deposition testimony of Mike Viano that he directly made the payment to CNB and that it was not paid from the Debtor's account. CNB stated that it reached out to Mr. Viano as he was a guarantor of the loan and requested the $200,000. Mr. Viano then provided the $200,000 to his attorneys who put it into their account and then paid it to CNB. The Trustee disagrees with CNB on two grounds. First, there are still disputed facts regarding if the payments were made by the Debtor or not. This is due to the Debtor and Mr. Viano sharing an attorney, the same attorney who received and paid the $200,000. Second, pursuant to the communications regarding a proposed settlement between Debtor, CNB, and Nike, the money was to be paid from the Debtor.

One thing not directly addressed by the parties is what happens if there is a finding that CNB's liens are perfected in the prior Counts. This issue has already been resolved by the Bankruptcy Court for the Southern District of Illinois. *United Scis. Induc. v. Southwest Bank (In*

*re EDG Holdings, Inc.)*, 438 B.R.154 (Bankr. S.D. Ill. 2010). In this case, the Court found that the post-petition transfers were authorized by a previous order, but even if they were not, it is the view that courts elect not to avoid transfers made to the holder of a secured claim as the avoidance would not benefit the estate. *Id.* at *161. This is due to the fact that returning this property to the estate would ultimately end in it being returned to the secured creditor. *Id*.

  The Counts in the Trustee's complaint seeking recovery of the $200,000.00 are based on the allegations that CNB is not a secured creditor. With the previous determination that CNB is a secured creditor, it follows that summary judgment on these Counts in the Trustee's complaints attempting to recover the $200,000.00 payment, should be granted in CNBs favor.

  See orders entered this date


ENTERED: March 9, 2023

              /s/ William V. Altenberger
              UNITED STATES BANKRUPTCY JUDGE